**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| IN RE:   ESTATE OF LARRY W. COOK<br>Deceased | |
| JANINE SATTERFIELD, Individually and in Her capacity as Administrator for the Estate of Larry W. Cook,<br><br>*Plaintiff*,<br><br>v.<br><br>WELLS FARGO & COMPANY, *et al.*,<br><br>*Defendants*. | Civil No. 1:23-cv-00009 CMH/LRV |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S
<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT</u>**

> Mary C. Zinsner, VSB  31397
> TROUTMAN PEPPER HAMILTON SANDERS LLP
> 401 9th Street NW, Suite 1000
> Washington, DC 20004
> Telephone:  202.274.1932
> Email: mary.zinsner@troutman.com
>
> David M. Gettings, VSB 80394
> Troutman Pepper Hamilton Sanders LLP
> 222 Central Park Avenue, Suite 2000
> Virginia Beach, VA 23462
> Telephone: (757) 687-7500
> Email: david.gettings@troutman.com
>
> *Counsel for Navy Federal Credit Union*

Navy Federal Credit Union ("Navy Federal"), by counsel, submits this reply memorandum in support of its motion to dismiss Plaintiff Janine Satterfield's ("Plaintiff") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim ("Motion").

## INTRODUCTION

Plaintiff, suing in her capacity as Administrator of the Estate Larry W. Cook ("Cook"), recognized the strength of the arguments defendants raised and, rather than face dismissal, filed an amended complaint (the "Amended Complaint"). The Amended Complaint, however, fails to cure any of the fatal defects that plagued the original complaint. Try as she might, Plaintiff simply cannot establish that Navy Federal had a recognized duty to protect Cook from the criminal conduct of the third-party fraudsters or prevent Cook from transferring his funds as requested. Plaintiff's entire case distills to a theory that Navy Federal "should have done more." *See* Opp. at 12. Virginia law, however, simply does not impose an obligation on Navy Federal to shield Cook from the criminal conduct of the third-party scammers or refuse to process the transactions he directed Navy Federal to initiate merely because it had a concern the circumstances were suspicious. Navy Federal is a credit union, which undertakes financial transactions customers request, not an insurer of the well-being of its customers. Navy Federal had no obligation to refuse the transactions, and in fact, Cook insisted that Navy Federal complete the wire transactions and grew angry when questioned.[1] The bottom line is that Navy Federal did not owe Cook a recognized

---

[1] *See, e.g.,* Am. Compl., Ex. 8, at 8 ("On both phone calls, Mr. Cook refused to speak in depth about the financial exploitation concern and became angry that anyone had suggested he was being victimized."); *Id.* at 12 ("[Cook] yelled that he was doing what he wanted to do with his money and it was none of [Adult Protective Services'] business."); *Id.* at 13 ("[Cook] reported that he was repaying a loan. [Adult Protective Services] inquired about taking out a loan from a foreign country and not from the U.S." and "[Cook] stated that he wasn't doing anything that he didn't want to do.")

1

duty under Virginia law with respect to the transfers, and, as a result, the Court should dismiss Plaintiff's claims with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CLAMS AGAINST NAVY FEDERAL ARE DISPLACED BY ARTICLE 4A OF THE UNIFORM COMMERCIAL CODE ("U.C.C.")

In her Opposition, Plaintiff argues that U.C.C. Article 4A has no bearing on her claims because they relate to Navy Federal's conduct "prior to" the wire transfers. Opp. at 4. By framing her allegations in this manner, Plaintiff hopes to remove her state law tort claims from the preemptive reach of the U.C.C. Plaintiff's argument is belied by the allegations in the Amended Complaint, which clearly allege that Navy Federal accepted and completed the wire transfers that Cook ordered. Thus, Plaintiff's attempt to evade Article 4A's displacement principles by recharacterizing the nature of the conduct as occurring "prior to" the transfers does not pass muster.

Plaintiff's claims unquestionably center around her belief that Navy Federal should not have accepted Cook's payment orders. Specifically, Plaintiff highlights the fact that Navy Federal "*allowed* Mr. Cook to wire out, approximately, seventy-four (74) international wire transfers" and even notes that, "[i]n addition, Mr. Cook incurred $1,850 in wire transfer fees, at the rate of $25.00 per each wire transfer, with NFCU." Am. Compl. ¶ 5 (emphasis added). *See also* Am. Compl. ¶ 107 ("NFCU further breached its duty to Mr. Cook when it *allowed him…to wire* a total of three million six hundred and thirty-one hundred [sic] thousand, and two hundred dollars…in seventy-four (74) separate wire transfers…") (emphasis added). Plaintiff also alleges that "[a]t no such time, before, during or after, making a report to APS, did NFCU *stop wiring the money out*," and that "NFCU was negligent *in allowing Mr. Cook to make* these irregular and fraudulent wire transfers." Compl. ¶¶ 66, 69 (emphasis added). *See also* Compl. ¶ 74 ("NFCU failed to protect Mr. Cook's funds by *timely terminating or suspending* wire transfers…") (emphasis added).

2

Further, Plaintiff alleges that Navy Federal "fail[ed] to take the internal steps necessary to *stop sending the wires out* on [Cook's] behalf." Compl. ¶ 83 (emphasis added).

Plaintiff's own allegations make clear that her claims are founded on the contention that Navy Federal acted improperly when it *accepted* and *processed* Cook's payment orders. Accordingly, Plaintiff's claims are unequivocally linked to the wire transfers themselves, not conduct that took place before the transfers were made. Therefore, the express provisions of Article 4A of the U.C.C. preempt Plaintiff's claims against Navy Federal.

### a. Article 4A expressly forecloses pre-acceptance liability for a receiving bank with respect to a wire transfer.

Plaintiff's Opposition leaves untouched Navy Federal's argument that her pre-acceptance claims are expressly precluded under Article 4A. She has no legitimate rebuttal. The law is clear that, under Article 4A, "[l]iability based on acceptance arises only when *acceptance occurs* as stated in § 8.4A-209, and liability is limited to that provided in this title."[2] Va. Code Ann. § 8.4A-212 (emphasis added). Furthermore, Article 4A unequivocally provides that a receiving bank "does not otherwise have any duty…*before acceptance, to take any action, or refrain from taking any action*, with respect to the order except as provided in this title or by express agreement." Va. Code Ann. § 8.4A-212 (emphasis added). A "receiving bank" is defined under § 8.4A-103(4) as "the bank to which the sender's instruction is addressed." A "sender" is defined as "the person giving the instruction to the receiving bank." Va. Code Ann. § 8.4A-103(5).

---

[2] Section 8.4A-209 provides that a receiving bank "accepts a payment order when it executes the order." Va. Code Ann. § 8.4A-209(a). This section of the Article also provides that "[a]cceptance of a payment order cannot occur before the order is received by the receiving bank." Va. Code Ann. § 8.4A-209(c).

3

As noted, *supra*, and in Navy Federal's motion to dismiss, Plaintiff's *entire* case rests on Plaintiff's opinion that Navy Federal, a receiving bank, should not have accepted Cook's transfer orders. *See* Opp. at 5 (emphasis added) ("The issue here is not whether NFCU properly executed the wire transfers in accordance with Article 4A and standard banking practices, but rather *what duty NFCU owed to [Cook] prior to issuing the wire transfer*."). Plaintiff implores this Court to do precisely what Article 4A prohibits: impose a duty on Navy Federal to act or not act with respect to a payment order *before* accepting the order, even though Article 4A is clear that no such duty exists prior to acceptance of the order. Allowing Plaintiff's claims to survive dismissal would render the express provisions of Article 4A meaningless. As a result, Plaintiff's claims must be dismissed with prejudice.

### b. Plaintiff offers no authority to support her position that Article 4A does not apply to her claims.

In her Opposition, Plaintiff advances two propositions in support of her contention that Article 4A does not bar her claims. First, she asserts that Article 4A's drafters did not intend to preclude a plaintiff's ability to rely on law and equity claims when challenging conduct regulated by the U.C.C. *See* Opp. at 5-6 ("The Official Comment of Virginia Code Section 8.4A-102…does not state that the drafters intended to completely prohibit a party's reliance on law and equity claims.") (quoting *AG4 Holding LLC v. Regency Title & Escrow Servs.*, 98 Va. Cir. 89, 98 (Fairfax Cir. 2018)). Second, Plaintiff argues that common law claims are not displaced by the U.C.C. where the common law does not interfere with the U.C.C.'s purpose. *See id*. at 6 ("As a general rule…the UCC does not displace the common law of tort…except insofar as reliance on the common law would thwart the purposes of the Code.") (quoting *First Georgia Bank v. Webster*, 168 Ga. App. 307, 308 (1983)). Plaintiff goes on to argue that "the UCC does not displace all common law actions based on activities surrounding funds transfers" as support for her proposition

4

that "NFCU's actions in allowing the wire transfers to occur, prior to the actual wire transfers were executed [sic], are still subject to common law claims." *Id*.

To the contrary, and as Navy Federal previously pointed out, Article 4A expressly forecloses the argument that a bank has a duty to act or not act with respect to a payment order prior to that payment order being accepted. *See* Va. Code Ann. § 8.4A-212 (emphasis added) (establishing that a receiving bank "does not otherwise have any duty…*before acceptance, to take any action, or refrain from taking any action*, with respect to the order except as provided in this title or by express agreement"). Additionally, even though Plaintiff contends in her Opposition that the U.C.C. is not applicable to her claims, her Amended Complaint expressly acknowledges that the U.C.C. is implicated in the case. In Paragraph 97 of the Amended Complaint, Plaintiff alleges that "[u]nder the Uniform Commercial Code ("UCC"), an implied covenant of good faith and fair dealing governs all contracts." Thus, Plaintiff recognizes the applicability of the U.C.C. to her claims, even though she posits in her Opposition that it does not apply.

In her Opposition, Plaintiff also criticizes Navy Federal for relying on another court's sound reasoning with respect to facts similar to the Amended Complaint. Specifically, Plaintiff contends that Navy Federal's reliance on a North Carolina case is misplaced. Opp. at 7. In *Napoli v. Scottrade, Inc.*, 2018 N.C. App. LEXIS 577 (N.C. Ct. App. June 5, 2018), the North Carolina Court of Appeals considered whether the plaintiff had sufficiently alleged a duty actionable in negligence on the part of the defendant bank. Plaintiff alleged that her eighty-one-year-old mother, who had shown signs of dementia but had not been adjudicated incompetent, initiated multiple suspicious bank transactions, which included wire transfers. *Id.* at *1. After finding that U.C.C. Article 4A governed the claims, the North Carolina Court of Appeals rejected plaintiff's

5

negligence claims, noting that the plaintiff could not establish the requisite elements of duty and breach. *Id.* at *2-5.

Plaintiff takes issue with the court's statement in *Napoli* that Article 4A provides "the bright line rule that there must be actual *adjudication* of incompetency for a bank to refuse a customer's instruction," arguing that the "bold statement by the North Carolina Court of Appeals does not comport with the plain language of U.C.C. Article 8.4A-211…as adopted in Virginia." *Id.* However, Plaintiff's fixation on a single word – revocation – causes her to lose sight of the guiding principle underlying the court's rationale. The Official Comments to the section provide valuable insight that Plaintiff overlooks.

Official Comment 6 to § 8.4A-211 explains that "[a]cceptance by the receiving bank of a payment order issued by the sender is comparable to acceptance of an offer under the law of contracts. Under that law the death or legal incapacity of an offeror terminates the offer even though the offeree has no notice of the death or incapacity." Comment 6 also explains that subsection (g) is similar to Section 4-405(1) of Article 4 of the U.C.C., which applies to checks. *Id.* Section 8.4-405(a) of Virginia's U.C.C., Virginia's version of U.C.C. § 4-405 provides that

> A payor or collecting bank's authority to accept, pay or collect an item or to account for proceeds of its collection if otherwise effective is not rendered ineffective by the incapacity of a customer of either bank existing at the time the item is issued or its collection is undertaken if the bank does not know of an adjudication of incapacity. Neither death nor incapacity of a customer revokes the authority to accept, pay, collect or account until the bank knows of the fact of death or of an adjudication of incapacity and has reasonable opportunity to act on it.

Thus, as the Official Comments to § 8.4A-211 demonstrate, the drafters contemplated that an individual's incapacity only forecloses a receiving bank's authority to accept a payment order from that individual if the bank knows of an adjudication of incapacity. Otherwise, customers could

6

routinely claim incapacity to unwind a wire transfer (or argue that a bank should not have accepted, as does Plaintiff in this case).

Plaintiff's claims here fall squarely within the sound rationale of the *Napoli* court's interpretation of North Carolina's version of Article 4A, the provisions of which are identical to Virginia's Article 4A. And the facts in *Napoli* are virtually indistinguishable from those that Plaintiff alleges here. In fact, Plaintiff makes no attempt in her Opposition to distinguish the facts of *Napoli* from the facts of her case; nor can she. Instead, she merely attempts to redirect this Court away from reaching the same result by asserting, without support, that the *Napoli* court was somehow extreme in its application of the law to a virtually identical set of facts. However, the *Napoli* court's application of U.C.C. to the facts of that case was sound. More importantly, Virginia law mandates the same outcome in this case. Plaintiff's claims contradict Article 4A of the U.C.C. and must be dismissed as a matter of law.

## II.     PLAINTIFF FAILS TO ESTABLISH THAT NAVY FEDERAL OWED COOK A COMMON LAW DUTY OF CARE

### a. There is no recognized duty of care.

In her Opposition, Plaintiff implores this Court to impose new duties of care on financial institutions and recognize a cause of action for elder fraud. The Supreme Court of Virginia and the Court of Appeals of Virginia, however, have never singled out financial institutions and imposed such duties of care in the context presented here. Accordingly, Plaintiff's claims fail as a matter of law, and the Court should reject her attempt to manufacture a claim where none exists.

Plaintiff's reliance on *In re Capital One Consumer Data Sec. Breach Litig*, 488 F. Supp. 3d 374 (E.D. Va. 2020) is misplaced. In *Capital One*, the Court considered at the motion to dismiss stage whether the economic loss rules of several states operated to bar claims by putative class members for their compromised personal identifying information ("PII") following a data security

7

breach. *Id.* at 393. This Court noted that a general exception to the economic loss rule exists where a defendant has violated an independent duty that does not arise from contractual expectations, and there is a "special relationship" exception that removes the claims from the scope of the economic loss rule. *Id.* at 393-94.

When considering the application of Virginia's economic rule to the facts of *Capital One*, the Court determined that a special relationship existed between a credit card company and its customer and non-customer putative class members where the company took affirmative steps to "solicit customers' PII…then continued to possess and aggregate that PII with other customer's PII for its own business purposes, beyond those pertaining to the particular customer whose PII was obtained," thereby "creat[ing] a massive concentration of PII…all in an effort to boost its profits." *Id.* at 399. Based on these "affirmative acts and representations regarding its ability and responsibility to render adequate data protection services to its customers," along with the allegation that the credit card company was aware of vulnerabilities in its data storage system, this Court found the facts the plaintiffs alleged were sufficient to make plausible negligence claims that would not be barred under the economic loss rule. *Id.* at 400-01.

The assumption of duty ruling in *Capital One* was the subject of multiple follow-up motions for reconsideration and a request by the credit card company to certify the issue to the Supreme Court of Virginia, which this Court granted. *See* MDL No. 1:19md2915 [ECF Nos. 916, 1107]. The credit card company argued that no decision from the Supreme Court of Virginia or other appellate court recognized such a duty, and that Section 323 of the Restatement of Torts, which was the basis for the Court's ruling, required damages from physical harm (which did not exist). *See Id.* On May 7, 2021, the Court granted the credit card company's motion to certify the question of law to the Supreme Court of Virginia. *See* MDL No. 1:19md2915 ECF 1292. By

Order dated May 20, 2021, the Supreme Court of Virginia declined to accept the certified question of law. *See* MDL No. 1:19md2915 [ECF 1380]. Although the Court was poised to revisit its controversial ruling at the summary judgment stage, the case settled before the summary judgment motions were decided.

Even so, Plaintiff's attempt to liken Navy Federal's alleged conduct to that of the credit card company in *Capital One* to establish a duty on Navy Federal's part fails. The two cases are clearly distinct for several reasons. Indeed, one of the most salient distinctions is that Plaintiff has not alleged, nor can she, that Navy Federal took some affirmative action or made any representation that Navy Federal had the responsibility or ability to protect Cook from the conduct of third-party scammers. *Capital One* involved a claim that the credit card company failed to protect the private financial data and personal information of its customers when it was victimized by a data breach, after promising on its website that it would protect and keep private customer data. This case, on the other hand, involves a claim that Navy Federal should have refused to bank a customer who initiated multiple wire transfers because the circumstances of the wires were suspicious in that they involved overseas accounts and large sums of money. The cases are remarkably different, and the law imposes no such duty on Navy Federal.

> **b. Plaintiff cannot show that Navy Federal expressly communicated its intention to protect Cook from third-party conduct and, therefore, cannot show that Navy Federal voluntarily assumed a duty of care to Cook.**

Plaintiff's Opposition, like her Amended Complaint, fails to establish that Navy Federal had a duty to Cook with respect to the wire transfers. She now admits in her Opposition that the *only* basis for her alleging that Navy Federal voluntarily assumed a duty to protect Cook was that it filed a report with APS. *See* Opp. at 8 ("NFCU assumed that duty by filing a report with APS."). However, Plaintiff does not allege, nor can she, that Navy Federal ever communicated to Cook,

9

his family members, or even APS, that Navy Federal would affirmatively take action to ignore Cook's specific direction to process the wire transfers in order to prevent the alleged criminal conduct of the international accountholders. Moreover, Plaintiff's Complaint is devoid of any allegations that Navy Federal represented to Cook, or anyone else, that Navy Federal would monitor Cook's accounts, investigate the purpose of the wires, or protect Cook from a potential scam. In other words, Plaintiff does not allege, because she cannot, that Navy Federal ever expressly communicated to Cook, or anyone else, its intention to protect Cook from the illegal conduct of a third party.

Recognizing as much, Plaintiff invents a representation that she contends would have led Cook to believe that Navy Federal undertook a duty to protect him. Plaintiff now includes an allegation that Navy Federal "advertises itself as being a trusted financial institution for its members." Am. Compl. ¶ 81. Based on this allegation, she concludes in her Opposition that it is, therefore, "quite reasonable for [Cook] to have believe [sic] that NFCU would look out for his interest when the time arose, as opposed to other financial institutions which did not advertise such a mission." Opp. at 9. According to Plaintiff, "NFCU's advertisements of serving military members, plus…reporting [Cook] to APS" sufficiently parallels the company's conduct in *Capital One* to "show[] a voluntary assumption of duty which NFCU later breach [sic] when it negligently failed to stop the wire transfers." *Id*.

Plaintiff falls grossly short, however, of establishing that Navy Federal represented to anyone, let alone Cook, that Navy Federal would protect him from an alleged fraudulent scheme by third-party scammers. For one, Plaintiff does not even allege that Cook was aware of Navy Federal's alleged advertisement, holding itself out as a trusted financial institution for its members. Nor does Plaintiff provide a basis in law for why this statement, even if communicated to Cook

10

directly, should be interpreted on such an unreasonably broad basis as creating a duty under the law where one does not otherwise exist. Thus, Plaintiff has not established a basis in law to support her conclusion that Navy Federal "had a duty to follow through with protecting [Cook] from further exploitation" simply because APS concluded in its own investigative report that "[Cook] was an adult in need of services." Opp. at 8.

### c. Plaintiff's attempt to use the Bank Secrecy Act and federal agency guidance to establish that Navy Federal owed a duty to Cook underscores the reality that Virginia does not recognize the causes of action Plaintiff asserts.

Plaintiff's Opposition further underscores her struggle to piece together a cognizable claim against Navy Federal, evincing the fact that Navy Federal had no duty to protect Cook. She mentions, in passing, the mandates of the Bank Secrecy Act (the "Act"). *See* Opp. at 10 ("It is also worth mentioning that NFCU, as with other banks, has obligations under the Bank Secrecy Act (31 U.S.C. § 5311 *et seq*.)"). She goes on to argue:

> There are reporting requirements which are part of the [Bank Secrecy Act], to include mandatory reporting if the financial institution knows, suspects, or has reason to suspect that a transaction had no lawful purpose or is inconsistent with that customer's usual banking activity, and the financial institution knows of no reasonable explanation for the transaction."

Opp. at 11. Plaintiff's inclusion of this discussion of the Act is particularly confounding in light of the argument she includes in her Opposition just five paragraphs later that "Plaintiff has not pled, nor is she attempting, to enforce to enforce a private cause of action under the…*Bank Secrecy Act*…" Opp. at 15. Plaintiff's reference to the Act can only be interpreted as an attempt to backdoor a private cause of action against Navy Federal premised on its alleged failure to comply with the provisions of the Act. Stated differently, Plaintiff suggests that Navy Federal failed to meet its duty to Cook by highlighting the ways Navy Federal allegedly failed to comply with the Act's provisions.

11

In a separate, last-ditch effort to manufacture a duty on Navy Federal's part, Plaintiff even conjures up an "industry standard" as a barometer of Navy Federal's alleged negligence. *See* Opp. at 11-12 (discussing memoranda released by The U.S. Department of the Treasury Financial Crimes Enforcement Network and The Consumer Financial Protection Bureau offering "best practices" guidance for financial institution (Opp. App. A) and wire transfer checklist developed by Key Bank (Opp. App. B)). On this basis, Plaintiff's Opposition calls into question the adequacy of Navy Federal's employee training and internal processes, all a smokescreen for the unvarnished reality Plaintiff refuses to accept: she cannot state a claim against Navy Federal.

Article 4A of the U.C.C. expressly rejects the notion that Navy Federal has any duty to act or refrain from acting with respect to a payment order before that payment order being accepted. Plaintiff's futile argument that Navy Federal somehow voluntarily undertook a duty to protect Cook by filing a report with APS is an attempt to circumvent the unambiguous proscriptions of Article 4A. Thus, her attempts to manufacture a duty for Navy Federal must be rejected and her claims dismissed with prejudice.

### III. PLAINTIFF'S CLAIMS ARE BARRED BY THE ECONOMIC LOSS AND SOURCE OF DUTY RULES

Plaintiff concludes in her Opposition, without offering any support, that although "NFCU's undertaking to report [Cook] to APS was not derived from the contractual relationship between the parties…once NFCU made the report, it was required to follow through and offer additional protection to [Cook]." Opp. at 15-16. On this basis, Plaintiff concludes (again without offering support) that "the harm is rooted in negligence, not breach of contract." *Id.* at 16. For this reason, Plaintiff argues that this Court should not find that the economic loss rule bars Plaintiff's claims. *Id.* Plaintiff again attempts to draw on similarities that do not exist between this case and the Capital One case to manufacture support for her contentions.

12

Plaintiff's conclusory arguments regarding the operation of the economic loss and source of duty rules are no more availing than any of her other arguments. Plaintiff has not pointed to a single extra-contractual duty as the basis for her claims against Navy Federal. As explained in Navy Federal's Motion to Dismiss and in this Reply, the relationship between Navy Federal and Cook was strictly contractual. Plaintiff's claims stem from Navy Federal's acceptance of payment orders from Cook to transfer funds from his account to an international bank account. Navy Federal only assumed any obligation to pay (or not pay, as Plaintiff alleges) funds from Cook's account by way of a contractual agreement. Additionally, as set forth in this Reply and in Navy Federal's Motion to Dismiss, Plaintiff, unlike the allegations in Capital One, cannot establish that any special relationship existed between Navy Federal and Cook so as to supplant the economic loss and source of duty rules with respect to her negligence claim. Therefore, this Court should dismiss Plaintiff's negligence claims with prejudice.

## IV. THE STATUTE OF LIMITATIONS GOVERNING PLAINTIFF'S CLAIMS WAS NOT TOLLED

Plaintiff argues in her Opposition that the applicable statute of limitations was tolled and, therefore, her claims are not barred. *See* Opp. at 18-20. This argument is also wrong.

First, Plaintiff argues in her Opposition, though she does not allege so in her Amended Complaint, that Cook was "incapacitated at all relevant times."[3] Opp. at 18. With this argument,

---

[3] Although Plaintiff alleges that Cook suffered certain cognitive impairments as a result of a stroke he allegedly suffered in 2019, Plaintiff only alleges an "impaired…capacity to make reasoned and rational judgements." *See* Am. Compl. ¶ 32. She does not allege, as argued in her Opposition, that Cook was incapacitated at all relevant times. This is the case even though she alleges Cook "was discharged to in-patient rehabilitation where the full extent of his cognitive deficits were observed." Am. Compl. ¶ 31. To be clear, Plaintiff cannot allege that Cook was incapacitated because he was never so adjudicated.

Plaintiff attempts to utilize motions practice to mitigate the fatal defects of her Complaint. However, since she did not allege in her Complaint that Cook was incapacitated, it is improper for this Court to consider that fact in deciding Navy Federal's Motion to Dismiss. *See, e.g., E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.") (citations omitted); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526-27 (S.D.N.Y. 2015) ("Nevertheless, because a complaint cannot be amended merely by raising new facts and theories in a plaintiff's opposition papers, the allegations that [were not alleged in plaintiff's complaint] are not properly considered in the instant Motion.") (internal quotations omitted).

Second, Plaintiff, relying on the continuing tort doctrine, argues that "every wire transfer made by [Cook] was a continuous breach of duty by NFCU." Opp. at 19. Plaintiff then concludes that "[t]he allowance of any single wire transfer may not necessarily qualify as a negligent act. However, when taken as a whole, it is clear that a pattern of fraud and abuse was occurring. As a result, the limitations period did not start to run until April 20, 2021." *Id.* As noted previously, Plaintiff cannot, as a matter of law, establish that Navy Federal owed Cook any duty. Therefore, she is unable to demonstrate the existence of any continuing tort that would permit tolling of the statute of limitations. Accordingly, Plaintiff's claims with respect to any wire transfers that occurred more than two years before the date on which the Complaint was filed are barred and must be dismissed with prejudice.

---

Interestingly, the APS report upon which Plaintiff so heavily relies indicates Cook was not incapacitated. *See* Am. Compl., Ex. 8, at 4.

14

## CONCLUSION

For the reasons stated above, Plaintiff cannot plausibly allege any facts that would allow this Court to grant her the relief she requests in her Amended Complaint. Therefore, Navy Federal respectfully requests that this Court grant its Motion to Dismiss, dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice, refuse Plaintiff any further leave to amend her Complaint as any such amendment would be futile, and allow further relief as this Court deems just and proper.

Dated:   March 6, 2023                                             Respectfully submitted,

**NAVY FEDERAL CREDIT UNION**

By:/s/ Mary C. Zinsner
Mary C. Zinsner, VSB 31397
Troutman Pepper Hamilton Sanders LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone: 202-274-1932
Facsimile: 703-448-6514
Email: mary.zinsner@troutman.com

David M. Gettings, VSB 80394
Troutman Pepper Hamilton Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: david.gettings@troutman.com

*Counsel for Navy Federal Credit Union*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of March, 2023, a copy of the foregoing was filed via ECF, which will serve a copy on the following:

Kimberley Ann Murphy, Esq.
Lisa M. Campo, Esq.
Justin Berger, Esq.
HALE BALL CARLSON BAUMGARTNER MURPHY, PLC
10511 Judicial Drive
Fairfax, VA 22030
Tel: (703) 591-4900
Fax: (703) 591-5082
kmurphy@haleball.com
lcampo@haleball.com
jberger@haleball.com

*Counsel for Plaintiff*


Heather B. Chaney, Esq.
MCGUIRE WOODS
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Tel: (703) 712-5015
Fax: (703) 712-5236
hchaney@mcguirewoods.com

*Counsel for Wells Fargo & Company*


                                                 */s/ Mary C. Zinsner*
                                               Mary C. Zinsner (VA Bar No. 31397)